This is an appeal from a judgment of the Erie County Court of Common Pleas, Juvenile Division, which granted a motion for a change of custody filed by appellee, John K., and designated appellee as the residential parent and legal custodian of the parties' minor child, Brandon K.
On appeal appellant, Jennifer M., sets forth the following assignment of error:
 "1. THE TRIAL COURT'S GRANTING THE CHANGE IN CUSTODY WAS AN ABUSE OF DISCRETION AGAINST THE WEIGHT OF THE EVIDENCE AND WAS ARBITRARY, UNREASONABLE AND UNCONSCIONABLE."
The facts which are relevant to the issues raised on appeal are as follows. Appellant and appellee had a brief, intimate relationship in June 1991. Shortly after her relationship with appellee ended, appellant discovered she was pregnant. On March 17, 1992, appellant gave birth to a son, Brandon. On July 14, 1992, appellant filed a complaint in the Erie County Court of Common Pleas, Juvenile Division, to establish paternity of Brandon. The complaint also named Jamie S., a man appellant dated briefly after her relationship with appellee ended, as an additional defendant. When court-ordered paternity tests subsequently ruled out Jamie S. as Brandon's father, the complaint against him was dismissed. However, those same tests revealed a 99.9878 percent chance that appellee was Brandon's father.
On June 10, 1993, the trial court filed a judgment entry in which it found that appellee admitted he was Brandon's father, based on the results of the paternity tests. Accordingly, the trial court found that a parent-child relationship existed between Brandon and appellee, ordered appellee to pay child support to appellant, and established a schedule of visitation between appellee and his son. On August 10, 1993, following a hearing, the trial court filed a judgment entry in which it ordered Brandon's surname to be changed from appellant's maiden name to appellee's name.
Soon after Brandon's birth, appellant met and began dating Matthew M. On November 17, 1992, appellant and Matthew M. were married, and they have since had three children: Amber M., born June 11, 1993, Brooke M., born May 11, 1994, and Tyler M., born March 16, 1996. During the course of her married life, appellant has suffered numerous mental and physical illnesses, including panic attacks, suicidal depression, agoraphobia, substance abuse of prescription medication, anorexia and dehydration. Several of appellant's illnesses required hospitalization and/or frequent trips to the emergency room. During many of the times that appellant was incapacitated due to her illnesses, Brandon was cared for by appellee and his parents.
In addition to appellant's illnesses, appellant, Matthew M. and their children, including Brandon, moved as many as eight times during the first five years of Brandon's life. Appellant's family also suffered several financial setbacks, including the loss of Matthew's job due to appellant's frequent illnesses and demands on Matthew's time. Also, in 1995, the couple was unable to complete construction of a modular home on Berlin Road, Berlin Heights, Ohio, because they ran out of money and could not afford to install a septic system in the home.
Through most of Brandon's first three years of life, appellant and appellee cooperated in a liberal visitation schedule. However, in late 1994, appellant became more reluctant to allow appellee to visit with his son. On January 18, 1995, appellee met with appellant and told her that he was dissatisfied with the reduction in visitation, and he was considering seeking legal custody of Brandon if the situation did not improve. On January 25, 1995, after Brandon returned from a four-day visit with appellee, appellant took Brandon to Firelands Mental Health Center, where she stated that she believed Brandon had been sexually abused by appellee. Brandon was then referred to Bayshore Counseling Services, where he was treated by Mark Seymour who, at that time, was a mental health counselor-in-training.[1] On February 25, 1995, the Erie County Department of Human Services filed a criminal complaint against appellee, claiming that he had sexually abused Brandon. The trial court subsequently terminated all visitation between Brandon and appellee. On February 28, 1995, appellee filed a motion to change custody, and to reinstate visitation.
On October 4, 1995, the trial court dismissed appellee's motion to change custody and reinstate visitation, pending the resolution of the charges of sexual abuse against appellee. On September 11, 1996, after a jury was impaneled, the sexual abuse charges were dismissed by the prosecutor with prejudice. On October 29, 1996, appellee refiled his motions to change custody and reinstate visitation. On December 23, 1996, two years after visitation was terminated, the trial court granted appellee's motion to reinstate visitation with his son.
Hearings on appellee's second motion to change custody were held before a magistrate on April 17, 1997, and July 2 and 3, 1997. Testimony was presented at those hearings by various witnesses on behalf of both parties.
Appellant testified at the hearings that she was sexually abused as a child, an experience which she believes contributed to the "panic attacks," anorexia nervosa, and "anxiety attacks" she now suffers as an adult. Appellant further testified that the panic attacks keep her from working outside the home. Appellant stated that she has been hospitalized in California and Chicago for the panic attacks; however, she did not stay in treatment at either facility for more than two weeks. Appellant further stated that since her marriage to Matthew M., she and her family have lived in eight different places, including living with both parties' parents from time to time. Appellant testified that several of those moves were due to financial difficulties. For example, appellant stated that she and Matthew. M. could not complete the modular home on Berlin Road because they ran out of money and could not afford the house payments. She stated that a subsequent move, from a house on Avenue A in Mitiwanga, Ohio, occurred because the landlord wanted to sell the house.
Appellant testified that Brandon gets along well with his half-siblings; however, he also enjoys visiting appellee's home. She further testified that she did not call Children's Services Bureau to report that appellee sexually abused Brandon. Appellant stated that Brandon is always well fed; however, she admitted that when the family lived on Avenue A, she allowed her children to play in the street along with several other neighborhood children. Appellant further stated that she sometimes locked the door to the house to keep Brandon out while she was cleaning, or to keep the younger children from running out of the house.
Lisa Marie Sheppard, one of appellant's former neighbors on Avenue A, testified that she had seen Brandon playing in the street on several occasions. Sheppard also testified that Brandon and Amber frequently appeared hungry, and that Brandon came into Sheppard's house, uninvited, on at least one occasion, and ate leftover food from the dinner plates on her dining room table. Harold Welker, appellant's former landlord, testified that he had observed Brandon trying to get his mother to unlock the door of the house on Avenue A so he could come in and go to the bathroom. Welker further testified that he had to evict appellant's family from that house because they stopped paying rent, and that the house required extensive cleaning and repairs after the family moved out.
Ellen Drake, who lived next door to appellant's unfinished modular home on Berlin Road, testified that appellant's family lived in the house from October 1995 until January 1996, even though the house was not finished. Drake further testified that she entered the house after the bank foreclosed on the property, and saw that "it was trashed, totally destroyed." Matt Work, a sanitarian for the Erie County Health Department, testified that no occupancy permit was ever issued for the Berlin Road house. Work further testified that he inspected the Berlin Road house after receiving complaints about its deteriorated condition, and saw water, toilet paper and raw sewage in the basement. Work stated that the house itself was "relatively trashed" and there were no steps leading from the ground floor down into the basement.
Donna Evans, a licensed social worker, testified at the hearings that, based on her interviews with the parties and their spouses and a review of appellant's medical and psychological records, including Seymour's and Stratton's written reports, she recommended a change of custody to appellee, with "liberal contact" between Brandon and appellant. Evans further testified that she was concerned about appellant's "stability"; however, Evans testified on cross-examination that she saw no indication that appellant did not properly care for Brandon. Evans stated that Brandon is a "very happy child" and that he has a strong bond with his half-siblings.
Appellee testified at the hearings that he decided to seek custody of Brandon in December 1994, after appellant refused to bring Brandon to appellee's house for a planned Christmas celebration. Appellee further testified that, in his opinion, the sexual abuse allegation was made against him because he wanted custody of Brandon. Appellee stated that Brandon is comfortable visiting appellee's home now that visitation has resumed, and that he is seeking custody of Brandon because he wants to give his son the best possible environment. Appellee further stated that he is now married, owns a home, and is self-employed as the owner of a restaurant. He testified that he has made arrangements to pay both current child support and the arrearages which accrued due to his change of employment through automatic withholding from his bank account. In addition, appellee and his wife, Billie Jo K., both testified at the hearings that they would have time to watch Brandon, even if it meant working opposite shifts at the restaurant, and that appellee's parents would be able to watch Brandon if they both had to work.
John Stratton, Ph.D., a court-appointed psychologist, testified at the hearings that he had interviewed all of the parties involved in this case, spoken to individuals involved in prosecuting the sexual abuse case against appellee, reviewed a written assessment of appellant that was prepared by Richard J. Stanack, Ph.D. in connection with the criminal case, and conducted his own psychological testing on appellant, appellee, Matthew M., Billie Jo K., and Brandon. Stratton testified that the psychological testing revealed that Matthew M., appellee and Billie Jo K. all tested "within normal limits"; however, appellant had abnormal test results in five "indices," and "scored critically" on the anxiety and health scales of the Minnesota Multiphasic Personality Inventory (MMPI) test. Stratton stated that individuals who score similarly to appellant on the MMPI test typically are "crisis oriented" and tend to have a physical reaction to stress, resulting in reduced psychological function; however, their physical complaints often are not traceable to organic causes. He further stated that when such individuals are under stress they have difficulty handling routine affairs, may suffer from poor memory and lack of concentration, and are unable to make decisions.
Stratton testified that Brandon is a "fairly normal" child; however, people have trouble understanding his speech, and he is probably suffering from a lack of intellectual stimulation while in appellant's care. He stated that Brandon's scores on developmental tests gave no indication that his intelligence was extremely low or extremely high; however, Brandon was not given any specific tests to measure his intelligence. Stratton stated that a shared parenting plan "would be most beneficial" in this case; however, if a transition to appellee's custody is to occur, it must be done slowly, over a period of at least four months. Stratton further stated that he has "some concerns" about appellant's parenting ability.
On cross-examination, Stratton testified that appellee is still angry at appellant about the unproven sexual abuse allegations, and that he believes the allegations were falsely made, given the facts of the case. Finally, Stratton recommended that appellee be designated as Brandon's residential parent and legal custodian, with a transition taking place slowly. Stratton also recommended that appellant be given more than the standard amount of visitation with Brandon, so long as the parties could cooperate with each other. In addition, Stratton recommended that appellant receive counseling.
Appellant's husband, Matthew M., testified at the hearings that he and his family lived in the Berlin Road house only on weekends, and that they kept a dog in the basement of the house for several months in late 1995, which may have been the source of the "sewage" observed by Work. Matthew M. further testified that the family never used the toilets in the Berlin Road house, and that the paper in the basement may have been from boxes that were stored there when the basement flooded. He stated that they had to move from the Avenue A house because the landlord could no longer afford to pay the utilities.
Matthew M. testified that appellant began having health problems after Brooke was born prematurely. He further testified that, in addition to her hospitalizations in Chicago and California, appellant was treated at two different local hospitals for dehydration, and she spent a week at St. Vincent's hospital in Toledo for postpartum depression after Tyler was born.
Mark Seymour testified that he met with Brandon for approximately thirty sessions between August 1994 and July 2, 1997. Seymour testified that, based on information gathered in those sessions, he believes that removing Brandon from his mother would be detrimental to the child, and it is in Brandon's best interest for him to stay with appellant. On cross-examination, Seymour testified that Brandon missed seventeen of his scheduled appointments, Seymour never visited appellant's home, and he was not aware of appellant's frequent changes of residence.
In addition to the above testimony, the record contains a letter from Seymour to appellant's attorney, dated March 31, 1997, in which Seymour recommended that Brandon remain in the legal custody and care of appellant, and that he have "regular visitation" with appellee. The record also contains Stratton's written recommendations to the trial court, and his court-ordered psychological assessments of all the parties, both of which were subjects of his testimony at the hearings.
On September 22, 1997, the magistrate filed a ten-page decision, in which she recommended that appellee's motion to change custody be granted, and that appellee be designated as Brandon's residential parent and legal custodian. Specifically, the magistrate found that appellant's frequent moves, appellant's and Matthew M.'s failure to complete construction of their home, and appellant's physical and mental problems and apparent inability to cope with raising four small children constituted a sufficient change of circumstances to warrant an inquiry into whether a change of custody would be in Brandon's best interest. The magistrate further found that a modification of custody would be in Brandon's best interest, and that the harm caused by such a change is outweighed by the advantages thereof. Accordingly, after reviewing the evidence in light of the factors listed in R.C. 3109.04(F)(1), the magistrate recommended a change of custody from appellant to appellee. The magistrate further recommended that Brandon have "frequent contact with his mother and siblings" beyond the standard visitation provided by statute.
On October 8, 1997, appellant filed a general objection to the magistrate's decision and, on October 21, 1997, appellant filed a request for additional time to review a transcript of proceedings and file more specific objections thereto. On March 6, 1998, the parties filed a joint request for supplemental findings of fact by the magistrate, because certain portions of the taped trial proceedings were inaudible and could not be transcribed. On March 9, 1998, the magistrate filed a "STATEMENT OF THE EVIDENCE WHEN TRANSCRIPT IS UNAVAILABLE."[2] On June 5, 1998, the trial court filed a judgment entry in which it adopted the magistrate's decision. On June 16, 1998, a timely notice of appeal was filed.
Appellant asserts in her sole assignment of error that the trial court abused its discretion by granting appellee's motion to change custody. In support thereof, appellant argues that no evidence was presented at the hearings to demonstrate a change of circumstances and, even if such a change were demonstrated, no evidence was presented that a change of custody would be in Brandon's best interest. Appellant further argues that the harm that would be caused by separating Brandon from appellant, Amber, Brooke and Tyler outweighs any possible benefit Brandon might receive from having appellee as his residential parent and legal custodian.
Generally, a determination of child custody matters rests within the sound discretion of the trial court, and will not be overturned on appeal absent an abuse of that discretion.Davis Flickinger (1997), 77 Ohio St.3d 415, 418; Miller v.Miller (1988), 37 Ohio St.3d 71, 73. "The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
R.C. 2151.23(F)(1) requires a juvenile court to apply R.C.3109.04 in re-allocating parental rights and responsibilities. R.C. 3109.04(E)(1)(a) provides that the trial court:
 "shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on the facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 "(i) The residential parent agrees to a change in the residential parent * * *.
 "(ii) The child, with the consent of the residential parent * * *, has been integrated into the family of the person seeking to become the residential parent.
 "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
The Supreme Court of Ohio has held that while the "change of circumstance" required by R.C. 3109.04 need not rise to the level of a "substantial" change, it nevertheless "must be a change of substance, not a slight or inconsequential change."Davis v. Flickinger, supra, at 417. The record in this case reveals that, between June 10, 1993, when the trial court first designated appellant as Brandon's residential parent,[3] and October 29, 1996, when appellee filed his second motion for a change of custody, appellant's family had moved approximately eight times. Evidence was presented to show that appellant and Matthew M. made poor financial decisions and, as a result, could not afford to complete the modular home on Berlin Road. During that same time, appellant experienced numerous episodes of panic attacks, suicidal depression, anorexia nervosa, and dehydration, some of which required significant periods of hospitalization in local and out-of-state hospitals. Finally, it is undisputed that, as a result of the unproven charges of sexual abuse brought against appellee, which were initially based on statements made by appellant, appellee was denied visitation with his young son for a period of two years. Further, the allegations against appellee created a hostility between the parties which has lasted well beyond the termination of the criminal proceedings.
Upon consideration of the foregoing, this court cannot say that the trial court abused its discretion by finding, under the circumstances of this case, that a change of circumstance occurred which was of sufficient substance to warrant an inquiry into whether a change of custody is in Brandon's best interest.
R.C. 3109.04(F) further provides that, in determining whether a change of custody is in the best interest of a particular child, the trial court shall consider all relevant factors including, but not limited to, the following:
 "(a) The wishes of the child's parents regarding his care;
"* * *
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
"* * *
 "(i) whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; * * *."
Brandon K. is fortunate to have two loving and concerned parents who want to provide for his welfare. However, the record in this case demonstrates that Brandon's relatively short life with appellant has been turbulent and somewhat unstable. Evidence was presented that appellant suffers from significant mental and emotional problems, which affect her ability to parent Brandon, as well as her other three children. Appellant testified at the hearings that she is unable to care for her children during those times when she is ill, and that such periods can last anywhere from a few hours to several weeks. It is undisputed that, during several of appellant's more lengthy illnesses, Brandon was cared for by appellee and appellee's family members.
As stated above, evidence was presented that appellant curtailed appellee's previously flexible visitation with Brandon in late 1994 and, when appellee said he intended to seek custody of Brandon, she made accusations to mental health professionals that resulted in criminal sexual abuse charges being brought against appellee. Such charges were never proven to be true; however, as a result, appellee was denied all visitation with Brandon for two years.
In contrast, evidence was presented that appellee and his wife own their own business, have a comfortable home, and are willing and able to care for Brandon on a full-time basis. All those witnesses who had observed appellee interacting with Brandon, including appellant, testified at the hearings that father and son are getting along well and that Brandon enjoys visiting with appellee, despite the long disruption in visitation.
This court has reviewed the entire record of proceedings which was before the trial court and, upon consideration thereof and the law, finds that the trial court did not abuse its discretion by finding that a change of custody is in Brandon's best interest, and that the harm likely to be caused by such a change is outweighed by the potential advantages Brandon will enjoy as a result thereof. Accordingly, the trial court did not err by granting a change of custody and designating appellee as Brandon K.'s residential parent and legal custodian, or by granting appellant visitation in an amount in excess of the standard visitation schedule. Appellant's sole assignment of error is therefore not well-taken.
On consideration whereof, this court finds further that substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas, Juvenile Division, is hereby affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ---------------------------- JUDGE
George M. Glasser, J. ---------------------------- JUDGE
Melvin L. Resnick, JUDGE CONCUR. ---------------------------- JUDGE
 Jennifer M. v. John K., E-98-037
[1] The record shows that Seymour completed the training hours necessary to become a licensed professional counselor in June 1997.
[2] The testimony of Mark Seymour and John Stratton, Ph.D., as stated above, was taken from the magistrate's statement of the evidence.
[3] It is undisputed that appellant has raised Brandon from birth, and that, in its June 10, 1993 judgment entry, the trial court referred to appellant as both the child support "obligee" and as Brandon's "residential parent and legal custodian." Accordingly, the trial court correctly determined that it must first find that a change of circumstances has occurred before it may proceed to find whether a change of custody is in Brandon's best interest. See In re Yates (1984), 18 Ohio App.3d 95, at the syllabus.